# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JEREMY J. ZARTMAN, | ) |
| Plaintiff, | ) |
| v. | ) Cause No. 1:18-CV-133-HAB |
| JEFFREY S. TAME and METROPOLITAN LIFE INSURANCE COMPANY, | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendant Metropolitan Life Insurance Company's ("MetLife") Motion for Summary Judgment (ECF No. 34) and Defendant Jeffrey S. Tame's ("Tame") Motion for Summary Judgment (ECF No. 37).[1] Zartman has failed to file a response. The deadline for Zartman to file a response having passed, this matter is now ripe for determination.

### I. FACTUAL BACKGROUND

Carolyn Widley ("Widley") was a long-time employee of General Motors. As part of her employment, Widley was part of an ERISA plan sponsored by GM, which included a basic life benefit of $60,000 (the "Benefit"). On May 19, 2004, Widley completed a Beneficiary Designation form naming Tame, her then-husband, as the primary beneficiary of the Benefit. (ECF No. 34-2 at 525).

---

[1] Both Defendants filed their notices to Plaintiff Jeremy J. Zartman ("Zartman"), proceeding *pro se*, in compliance with Northern District of Indiana Local Rule 56-1(f) on August 5, 2019. (ECF Nos. 36, 40).

Widley and Tame divorced on or about February 9, 2011. On March 4, 2011, Widley completed another Beneficiary Designation form. (*Id*. at 503). For the Primary Beneficiary Designation, Widley input the following information:

| Full Name (Last, First, Middle Initial) | Relationship | Date of Birth | Address (Street, City, State, Zip) | Share % |
|---|---|---|---|---|
| ~~Jeremy~~ | | | | |
| Zartman Jeremy D. | son | ##-##-77 | 5353 N 700 E, Churubusco IN 46723 | 50 |
| Zartman Joshua L. | son | ##-##-80 | 5353 N 700 E, Churubusco IN 46723 | 50 |

Payment will be made in equal shares or all to the survivor unless otherwise indicated. TOTAL: 100%

(*Id*.). At the bottom of the form, Widley specifically noted the date of her divorce from Tame. (*Id*.). On the same day, Widley submitted a hand-written note providing GM with her divorce decree and asking that Tame be taken off her health insurance. (*Id*. at 502).

While any reasonable person would view Widley's writing of "~~Jeremy~~" in the first box above as a crossed-out error, the result of Widley failing to follow the "Last, First, Middle Initial" format called for by the form, MetLife apparently believed that ~~Jeremy~~ was a separate person. On Match 9, 2011, MetLife sent Widley a letter stating that it was "unable to process" the Beneficiary Designation form because it "contains incomplete or missing information." (*Id*. at 530). Specifically, MetLife informed Widley that she needed to "[p]rovide the date of birth (mm/dd/yyyy) for all primary and contingent beneficiaries." (*Id*.). MetLife provided Widley instructions on how to correct the error, and informed Widley that "a letter of confirmation will be mailed to your address of record" once the beneficiary change was effective. (*Id*.).

> In its summary judgment brief, MetLife elaborates on Widley's error, stating that she:
>
> incorrectly filled out a Beneficiary Designation form by partially completing one name, striking through the name, and failing to include the relationship, date of birth, address, and share percentage of the benefits on the first line for the primary beneficiary.

2

(ECF No. 35 at 3). Stated another way, MetLife now claims that it needed ~~Jeremy~~'s date of birth, address, and share percentage before it could process the change of beneficiary.

For unexplained reasons, Widley never submitted another Beneficiary Designation form. Widley died on March 9, 2017. Zartman, Widley's son, filed a Life Insurance Claim Form (*Id*. at 498–501) on April 26, 2017. MetLife sent Zartman a letter (*Id*. at 539–40) on June 1, 2017, advising that his claim was denied because the May 19, 2004, designation naming Tame as the primary beneficiary controlled. The letter noted that MetLife had rejected the March 9, 2011, designation, and that Widley had failed to file any subsequent designation. Zartman followed the administrative appeal procedures set forth in the letter, and a final determination affirming the initial denial was made on September 27, 2017. (*Id*. at 548–49).

Following the denial of Zartman's claim, Tame filed a Life Insurance Claim form on October 11, 2017. (*Id*. at 551–53). Tame's claim was approved, and 100% of the Benefit was paid to Tame. (ECF No. 16 at 4).

## II. LEGAL ANALYSIS

A. *Summary Judgment Standard*

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and

3

inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

That Zartman has not filed a response to either summary judgment motion does not entitle either Defendant to summary judgment by default. Instead, the Court "must still review the uncontroverted facts and make a finding that summary judgment is appropriate as a matter of law." *Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996).

B.  *MetLife's Motion for Summary Judgment*

In reviewing a plan administrator's decision regarding plan benefits, the deference given to that decision depends on the discretion given to the administrator by the plan documents. When an ERISA insurance plan grants an administrator discretion to construe terms and determine coverage under the policy, a reviewing court may not overturn the administrator's interpretation unless the administrator's determination was arbitrary or capricious. *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir.2005); *see also Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569,

575 (7th Cir. 2006) (stating, in a case arising under 29 U.S.C. § 1132(a)(1)(B), that benefit determinations are reviewed under the arbitrary or capricious standard when the terms of the employee benefit plan afford the plan administrator broad discretion to interpret the plan and determine benefit eligibility); *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005) (same). Under this standard, so long as the administrator "makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts," then the administrator's determination is to be upheld. *Exbom v. Cent. States, Se. and Sw. Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990); *see also Russo v. Health, Welfare & Pension Fund*, 984 F.2d 762, 765 (7th Cir. 1993). Under the arbitrary or capricious standard, the reviewing court "do[es] not ask whether the administrator reached the correct conclusion or even whether it relied on the proper authority." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005). Rather, the question before a reviewing court is whether the administrator's "decision has 'rational support in the record.'" *Davis*, 444 F.3d at 576 (quoting *Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004)). "Put simply, an administrator's decision will not be overturned unless it is downright unreasonable." *Id*. (quotation marks and citation omitted).

Here, the Summary Plan Description provided MetLife with "discretionary authority to interpret and apply the Program on behalf of the Company." (ECF No. 34-2 at 120). MetLife asserts that this language entitles its determination to an arbitrary and capricious standard of review, and the Court agrees. The question, then, is whether MetLife's decision to deny Zartman's life insurance benefits claim was "downright unreasonable."

ERISA is silent as to explicit requirements for change of beneficiary designations, *Davis v. Combes*, 294 F.3d 931, 940 (7th Cir. 2002), and as to the resolution of disputes between putative

5

beneficiaries of a life insurance policy, *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 567 (7th Cir. 2002). The plan documents here provide little more direction. The Summary Plan Description states that plan participants "**may change [their] beneficiary at any time**" by filing a beneficiary designation form or by going online but says nothing more about the process. (ECF No. 34-2 at 89) (original emphasis). MetLife's Group Policy states, with respect to beneficiaries:

> 1. Your Beneficiary
>
> The "Beneficiary" is the person or persons YOU choose to receive any benefit payable because of YOUR death.
>
> YOU make YOUR choice in writing on a form approved by us. This form must be filed with the records for THIS PLAN.
>
> YOU may change the Beneficiary at any time by filing a new form with us. YOU do not need the consent of the Beneficiary to make a change. When we receive a form changing the Beneficiary, the change will take effect as of the date YOU signed it. The change of Beneficiary will take effect even if YOU are not alive when it is received, provided such change of beneficiary is received prior to the payment of benefits. Any beneficiary designation made for Basic Life Benefits will also apply to Accidental Death or Dismemberment Benefits.
>
> If there is no designated Beneficiary under Optional Life Benefits or Voluntary Accidental Death or Dismemberment Benefits, YOUR Beneficiary for all or part of the amount of benefits payable because of YOUR death under THIS PLAN, will be the Beneficiary YOU last designated for Basic Life Benefits under the Group Policy.
>
> A change of Beneficiary will not apply to any payment made by us prior to the date the form was received by us.

(*Id.* at 223). This is more helpful—it states that the change will be effective as of the date the participant signs the change of beneficiary form—but still does little to inform participants or the Court as to the standards by which attempted changes will be judged. The Court finds no other references in the plan documents regarding the method for changing a beneficiary, and MetLife identifies none.

Where ERISA is silent on a topic, and the plan documents provide no additional assistance, federal common law must fill the void. *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993). In the ERISA context, federal common law recognizes the concept of substantial compliance. *Combes*, 294 F.3d at 941.

> An insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to

6

> make the change and (2) attempts to effectuate the change by undertaking positive
> action which is for all practical purposes similar to the action required by the change
> of beneficiary provisions of the policy.

*Id.* (quoting *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994)). Although substantial compliance requires "substantial completion of the benefit change process," it does not require that a plan participant to do "all he could have done." *Id.*

Applying the substantial compliance doctrine to this case, the Court has little difficulty determining that MetLife's denial of Zartman's claim for benefits was "downright unreasonable." Widley plainly evidenced her intent to remove Tame as beneficiary from all her GM benefits. She specifically noted the date of her divorce on the March 4, 2011, Beneficiary Designation form, and submitted it along with a note providing GM with her divorce decree and asking that Tame be removed from her medical insurance. The submission of these documents was just over a month after her divorce was final. Tame is not listed anywhere on the form. There is no reasonable reading of the Beneficiary Designation form that leads to any conclusion other than that Widley intended to remove Tame as the primary beneficiary on her life insurance policy.

It is similarly clear that Widley attempted to effectuate the change through positive action like the action required by MetLife. Widley completed and signed MetLife's form, identifying her name, social security number, and the policies affected. She included all the requested information for the new beneficiaries, Jeremy and Joshua Zartman, including their names, relationships, dates of birth, addresses, and share percentages. The form is properly dated. It is, in nearly all respects, a properly completed form. Further, MetLife concedes that it received this form.

If anything, the errors that MetLife identifies only emphasize Widley's compliance. MetLife advances two bases for rejecting the form in its summary judgment filings: (1) the above-discussed failure to provide demographic information for a typo; and (2) failure to comply with a

direction on the form stating, "Do not erase or attempt to make corrections; use a new form." (ECF No. 35 at 3). These bases are both patently unreasonable and constitute deficiencies far more innocuous than those in comparable cases. *See*, *e.g.*, *Combes*, supra (substantial compliance found where insured failed to sign and date beneficiary change form); *Johnson*, supra (substantial compliance found where insured failed to identify affected plan); *Phoenix Mutual*, supra (substantial compliance found where insured failed to identify new beneficiary).

If the Court had any doubt about the outcome of this case, it was resolved by the Sixth Circuit's decision in *Guinn v. General Motors, LLC*[2], 766 Fed. Appx. 331 (6th Cir. 2019), a decision handed down less than six months ago. In that case, the decedent, also employed by GM, completed *the exact same* Beneficiary Designation form as Widley, inadvertently completing the latter half of the form which indicated that it should be completed "only if a trust has been created in an executed trust agreement." *Id*. at 332–33. After receiving the form, MetLife sent the decedent *the exact same* rejection letter, only this letter identified the necessary change as "please do not use the Trust area unless you are making that designation." *Id*. at 333. All of this occurred in the context of a MetLife group policy that contained *the exact same* language on beneficiaries as that quoted above. *Id*. at 332. Just as in this case, the decedent died without filing a corrected Beneficiary Designation form, and just as in this case MetLife denied the claim of the intended beneficiary in favor of a beneficiary listed on a previous form. *Id*. at 333.

On the basis of these facts, the Sixth Circuit determined not that the decedent had substantially complied with MetLife's requirements, but that she had "***strictly complied***" with the requirements. *Id*. at 336 (emphasis added). The court found that the group policy (which, again, is the same group policy as in this case at least with respect to beneficiaries) stated four requirements

---
[2] GM settled with the plaintiff prior to the appeal, leaving MetLife as the only defendant participating in the appeal. *Guinn*, 766 Fed. Appx. At 334.

for a participant to change a beneficiary: "[a] participant must: 1) choose the beneficiary in writing, 2) on a form approved by MetLife, and 3) sign and date the form; and 4) file the form with the records for the applicable Plan." *Id*. at 334. Just as in this case, there was no dispute whether the decedent chose the beneficiary in writing or signed and dated the form. Instead, the court examined the second and fourth requirements to determine compliance.

With respect to the requirement that the request be made "on a form approved by MetLife," the court found that this requirement was satisfied when the decedent completed MetLife's form, not when the completed form was approved. Noting that, as in this case, the group policy provided that " when we receive a form changing the Beneficiary, the change will take effect as of the date YOU signed" the form, the court stated that "[i]t would defy logic for the form to simultaneously take effect when MetLife receives it and to depend on some sort of further review by MetLife in order to become effective." *Id*. at 335. Therefore, the court found that the decedent's completion of MetLife's Beneficiary Designation form "strictly complied" with the requirement that the change be "on a form approved by MetLife" even though the decedent made errors in completing the form. *Id*. at 335–36.

The court additionally found that the decedent complied with the requirement that the change form be filed "with the records for the applicable Plan" when she submitted the form to MetLife.

> The Group Certificate states, "YOU may change the Beneficiary at any time by filing a new form with us." We interpret this language to mean that "filing" refers to the Plan participant's act of submitting the completed form, not a post-submission process to be completed by MetLife. It would again be illogical for this term to confer on MetLife the discretion to reject forms after receiving them by declining to literally place them in the correct file of the Plan participants, when the Plan also states that change of beneficiary forms take effect when they are received. The Plan requires participants seeking to change their beneficiaries to file with MetLife the proper form, containing the new choice of beneficiary, the signature of the Plan participant, and the date the form was completed. We will not interpret the

9

>Group Certificate to grant MetLife discretion that is simply not authorized by the
>Plan's language.

*Id*. at 336. Accordingly, the court determined that the decedent "successfully changed her beneficiary under the requirements of the Plan," and reversed the district court's decision to the contrary. *Id*.

There is no functional difference between the actions of the decedent in *Guinn* and the actions of Widley. If anything, Widley's error in filling out the Beneficiary Designation form was more minor than that in *Guinn*, where an entire section was erroneously completed. Finding no error in the reasoning of the Sixth Circuit, the Court concludes that Widley complied with the requirements set forth by MetLife in the plan documents and designated Zartman as a beneficiary.

The failure by MetLife to address substantial compliance is troubling, especially when MetLife is the named party in *Johnson*, one of two leading Seventh Circuit authorities on substantial compliance. The Court is equally concerned by MetLife's failure to bring the *Guinn* decision to the Court's attention. While *Guinn* is not from the controlling jurisdiction, the obvious similarities between the cases clearly suggests that MetLife was obligated to disclose that case to the Court. Indiana Rule of Professional Conduct 3.3 provides that a lawyer shall not knowingly fail to disclose authority to the tribunal that is adverse to the position of the client. The Court trusts that this was not a knowing violation but cautions MetLife and counsel against any further violations.

Although Zartman has not moved for summary judgment, a court may grant summary judgment to a non-moving party when there is no factual dispute and the non-movant is entitled to judgment as a matter of law. *See*, *e.g.*, *Spitz v. United States*, 432 F. Supp. 148, 150 (E.D. Wisc. 1977). Here, all the relevant facts are contained in the administrative record, and they are not in dispute. Since the Court has already concluded that Widley complied, both substantially and

strictly, with the requirements for changing her beneficiary designation, summary judgment will be entered in favor of Zartman finding that he is entitled to the 50% share designated in the March 4, 2011, Beneficiary Designation form.

C.  *Tame's Motion for Summary Judgment*

Zartman's claim against Tame does not fare so well. Having asserted a state law claim for tortious interference with contract, Zartman must prove: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Guinn v. Applied Composites Eng'g, Inc.*, 994 N.E.2d 1256, 1267 (Ind. Ct. App. 2013). Without deciding whether Zartman had a valid and enforceable contract with MetLife by virtue of his status as a beneficiary, the Court concludes that the undisputed facts do not demonstrate either knowledge or intent on the part of Tame to interfere with any contract.

As Tame points out, the timing of his claim for benefits defeats the tortious interference claim. Tame did not file his claim for benefits until October 11, 2017, two weeks after MetLife's final decision on Zartman's claim. All the information available to Tame, then, indicated that the May 19, 2004, Beneficiary Designation form was in force, and that he was the sole primary beneficiary on Widley's policy. The payment of benefits to Tame was ultimately incorrect, as set forth above, but the Court will not hold Tame responsible for MetLife's inability to comply with its own forms and policies. Summary judgment in favor of Tame is appropriate.

III.  CONCLUSION

For the foregoing reasons, MetLife's Motion for Summary Judgment (ECF No. 34) is DENIED. Tame's Motion for Summary Judgment (ECF No. 37) is GRANTED.

The Clerk is DIRECTED to enter judgment in favor of Jeremy J. Zartman and against Metropolitan Life Insurance Company in the amount of $30,000.00 plus interest as required in the plan documents. The Court is further DIRECTED to enter judgment in favor of Jeffrey S. Tame and against Jeremy J. Zartman.

SO ORDERED on September 12, 2019.

                                               s/ Holly A. Brady
                                               JUDGE HOLLY A. BRADY
                                               UNITED STATES DISTRICT COURT